IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

  vs.                                                   No. 14-CR-3604-MV

FIRAS ABU ZUHRIEH, *et al.*,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Defendant Islam Kandil's Motion to Sever [Doc. 22] and Defendant Firas Abu Zuhrieh's[1] Motion for Disclosure of Identity of and Information About Confidential Informant [Doc. 24]. The Court, having considered the Motions, briefs, relevant law, and being otherwise fully-informed, finds that the Motions are not well-taken and therefore will be **DENIED.**

**BACKGROUND**

This case centers on the purported sale of XLR-11, an alleged synthetic cannabinoid, from the "Ace Smoke Shop and Hookah Lounge" in Albuquerque, New Mexico. Doc. 22 ¶ 2.[2] The establishment, owned by Defendant Abu Zuhrieh and staffed, in part, by Defendant Kandil, evidently sold a product marketed as "'Bizarro,' which is referred to in the discovery as 'spice.'"

---

[1] In the Redacted Indictment [Doc. 11] and in various other filings, Defendant's name is typeset "Abuzuhrieh." In his Motion, however, Defendant inserts a space between "Abu" and "Zuhrieh." Given the Defendant's usage and the fact that "Abu" is the Arabic word for "father" and is commonly employed in surnames, the Court will refer to the Defendant as "Abu Zuhrieh."

[2] The numeration of the paragraphs in Defendant Kandil's brief is inaccurate; the Court's citations refer to the correct sequential order of the paragraphs.

*Id.* ¶ 3.  Kandil adds that while he admits that he served customers in the ordinary course of the smoke shop's business, which included the sale of "Bizarro," he was unaware that the product was a controlled substance.  *Id.*  Defendant Kandil argues that trying the Defendants jointly would result in unfair prejudice to him, while Defendant Abu Zuhrieh urges that an effective defense requires disclosure of the identity of a government informant who was supposedly involved in the investigation.  The Defendants have moved this Court accordingly.

## DISCUSSION

### I.  Motion to Sever

As an initial matter, the Court notes that Kandil concedes that he has been properly joined as a defendant with Abu Zuhrieh pursuant to Federal Rule of Criminal Procedure 8(b).  *See* Doc. 22 ¶ 4.  *See also* Fed. R. Crim. P. 8(b).  Consequently, the sole question before this Court is whether either Rule 14 or the Confrontation Clause counsels for severance of the two defendants.

    a.  *Federal Rule of Criminal Procedure 14*

Federal Rule of Criminal Procedure 14 permits the district courts to "order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires" where joinder "appears to prejudice a defendant or the government."  Fed. R. Crim. P. 14(a).  The Supreme Court has clarified that "when defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 ***only if*** there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  *Zafiro v. United States*, 506 U.S. 534, 539 (1993) (emphasis added).  Stated differently, the "prejudice standard [in Rule 14] requires a showing of actual prejudice, not merely a showing that a defendant may have a better chance of

acquittal in separate trials." *United States v. Caldwell*, 560 F.3d 1202, 1213 (10th Cir. 2009) (internal quotation marks omitted).

Hence, "[t]he requisite showing of prejudice is not made by a complaint that one defendant is less culpable than another, or by an allegation that a defendant would have a better chance of acquittal in a separate trial, or by a complaint of the spill-over effect of damaging evidence presented against a codefendant." *United States v. Morgan*, 748 F.3d 1024, 1043 (10th Cir. 2014) (internal quotation marks omitted). Further, the burden of demonstrating that severance is appropriate is particularly heavy where, as here, the Defendant "must overcome the presumption that in a conspiracy trial it is preferred that persons charged together be tried together." *United States v. Jones*, 530 F.3d 1292, 1302 (10th Cir. 2008) (internal quotation marks omitted). Finally, the prejudice to the Defendant must ultimately be weighed against the demands of judicial economy. *See, e.g.*, *United States v. Wardell*, 591 F.3d 1279, 1299 (10th Cir. 2009).

Here, Kandil argues that he will be prejudiced by statements made by Abu Zuhrieh and because "the evidence in the case is substantially greater regarding Firas Abuzuhrieh [sic], than regarding Islam Kandil, who was a simple cash register and display case attendant." Doc. 22 ¶ 6. These concerns amount to nothing more than a complaint about the "spill-over" effects of evidence admitted as to Abu Zuhrieh. Such frustrations, while understandable, are plainly insufficient to justify two separate trials on roughly the same set of facts. Further, the Court is confident that any risk of modest prejudice associated with evidence admitted against Abu Zuhrieh, but not Kandil, can be substantially reduced by crafting an appropriate instruction for the jury at trial. *See, e.g.*, *Richardson v. Marsh*, 481 U.S. 200, 211 (1987) (noting that, as a

3

general rule, "juries are presumed to follow their instructions."). Defendant has offered virtually nothing to demonstrate why he and his co-defendant should be tried separately and therefore cannot overcome the strong presumption in favor of a joint trial; thus, the Court holds that Rule 14 does not counsel severance in this case.

    b. *Bruton and the Confrontation Clause*

Kandil also contends that "the Due Process and Right of Confrontation clauses of the Fifth and Sixth Amendments to the United States Constitution, allow and sometimes require the severance of defendants for trial." Doc. 22 ¶ 4. Specifically, Defendant argues that a statement given by Defendant Abu Zuhrieh "regarding the supply of synthetic cannabinoids" will not be "subject to cross-examination" by Kandil and therefore will "violate the guarantees of the Sixth Amendment" as interpreted by the Supreme Court in *Bruton* and its progeny. Doc. 22 ¶ 4; *Bruton v. United States*, 391 U.S. 123 (1968). That is, Kandil believes that he will be implicated by the "admission of a nontestifying codefendant[]" and therefore will be placed in a constitutional dilemma with respect to statements introduced against him by a witness that he cannot cross-examine because that witness, as a co-defendant, cannot be compelled to testify. *See United States v. Nash*, 482 F.3d 1209, 1218 (10th Cir. 2007).

There is no such issue in this case. The government in its Response has committed "not [to] ask the testifying witness any questions related to statements from Defendant Abuzuhrieh [sic] about Defendant Kandil" and, "[a]s an added prophylactic, the government will instruct the witness not to volunteer" such information. Doc. 29 at 5. Redaction of this type is frequently employed by Courts to avoid *Bruton* issues, particularly in cases such as this, where references to the defendant in question can be inconspicuously avoided, thereby effectively eliminating the

general rule, "juries are presumed to follow their instructions."). Defendant has offered virtually nothing to demonstrate why he and his co-defendant should be tried separately and therefore cannot overcome the strong presumption in favor of a joint trial; thus, the Court holds that Rule 14 does not counsel severance in this case.

    b. *Bruton and the Confrontation Clause*

Kandil also contends that "the Due Process and Right of Confrontation clauses of the Fifth and Sixth Amendments to the United States Constitution, allow and sometimes require the severance of defendants for trial." Doc. 22 ¶ 4. Specifically, Defendant argues that a statement given by Defendant Abu Zuhrieh "regarding the supply of synthetic cannabinoids" will not be "subject to cross-examination" by Kandil and therefore will "violate the guarantees of the Sixth Amendment" as interpreted by the Supreme Court in *Bruton* and its progeny. Doc. 22 ¶ 4; *Bruton v. United States*, 391 U.S. 123 (1968). That is, Kandil believes that he will be implicated by the "admission of a nontestifying codefendant[]" and therefore will be placed in a constitutional dilemma with respect to statements introduced against him by a witness that he cannot cross-examine because that witness, as a co-defendant, cannot be compelled to testify. *See United States v. Nash*, 482 F.3d 1209, 1218 (10th Cir. 2007).

There is no such issue in this case. The government in its Response has committed "not [to] ask the testifying witness any questions related to statements from Defendant Abuzuhrieh [sic] about Defendant Kandil" and, "[a]s an added prophylactic, the government will instruct the witness not to volunteer" such information. Doc. 29 at 5. Redaction of this type is frequently employed by Courts to avoid *Bruton* issues, particularly in cases such as this, where references to the defendant in question can be inconspicuously avoided, thereby effectively eliminating the

risk of damaging jury speculation.  *See, e.g.*, *United States v. Verduzco-Martinez*, 186 F.3d 1208, 1213 (10th Cir. 1998) (noting that the Supreme Court has "held that there was no *Bruton* violation where the non-testifying codefendant's statement was redacted to remove all reference to the defendant and/or his existence and the jury was given a proper limiting instruction.").  *See also United States v. Shaw*, 758 F.3d 1187, 1195-96 (10th Cir. 2014) (discussing redaction with respect to *Bruton* and its progeny).  Thus, as the government will not introduce or elicit evidence regarding the admissions that reference Kandil, the protections of the Confrontation Clause do not demand severance.  Additionally, it is not at all clear to the Court that Abu Zuhrieh will elect not to testify at trial, which would, of course, resolve any potential Confrontation Clause issues by making the witness available for cross-examination.

In aggregate, Defendant's request for severance merely amounts to a general claim that he would likely fare better at an individual trial than he would if tried alongside Abu Zuhrieh.  This may well be the case, but such *de rigueur* assertions do not constitute the species of prejudice that would militate for bifurcating the trial.  *See, e.g.*, *Zafiro*, 506 U.S. at 540 (explaining that it is "well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials").  Consequently, the Court sees no basis for severance in the instant case.

## II.     Motion for Disclosure of Identity

It is now clear that the "government has a privilege 'to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law.'"  *United States v. Rivas*, 26 F. Supp. 3d 1082, 1113 (D.N.M. 2014) (quoting *Rovario v. United States*, 353 U.S. 53, 59 (1957)).  It is equally clear, however, that this

"privilege is not absolute" and must yield to a defendant's constitutional guarantee to a fair trial. *Rivas*, 26 F. Supp. 3d at 1113.  Even so, a "defendant seeking to force disclosure of an informant's identity has the burden to show the informant's testimony is relevant or essential to the fair determination of [the] defendant's case" and the court "must balance the public interest in protecting the flow of information against the individual's right to prepare his defense." *United States v. Gordon*, 173 F.3d 761, 767 (10th Cir. 1999).  As articulated by the Supreme Court, this analysis requires consideration of "the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors."  *Rovario*, 353 U.S. at 62.  *See also United States v. Mendoza-Salgado*, 964 F.2d 993, 1000 (10th Cir. 1992) (reiterating the *Rovario* factors).

       The Tenth Circuit has since clarified that, "in general, [d]isclosure of an informant is not required ... where the informant is not a participant in or a witness to the crime charged" and that "disclosure is rarely necessary when, as here, the informant's role was only as a tipster who provided probable cause for a search."  *United States v. Long*, 774 F.3d 653, 663 (10th Cir. 2014) (internal quotation marks and citations omitted).  So it is here.  The government has explained in its Response that "any informants that may have been used were neither participants in nor witnesses to any crime committed by the Defendant" and that, "other than a passing reference to an informant in the search warrant, there is no mention of any kind of informant in the produced discovery."  Doc. 28 at 2-3.

       The Defense offers nothing to the contrary; indeed, he did not file any reply whatsoever to the government's Response.  Even in his initial brief, moreover, Defendant's allegations remain self-consciously speculative, alleging only that his "[r]eview of the discovery provided to

6

date, and the independent defense investigation, *suggests* that an informant was involved in the investigation" and that "*[i]f* this perception is correct, [then] the informant was central in setting up the investigation and was the actual source for the alleged controlled substances which form the basis of this prosecution."  Doc. 24 at 2 (emphasis added).  This interpretation evidently misapprehends the facts; the government notes that the "controlled buy that serves as the basis for the distribution charge against the Defendant was conducted by an undercover law enforcement officer," rather than an informant.  Doc. 28 at 3.  Further, even if an informant provided *some* information to law enforcement officials that was then used to develop the investigation, this is obviously not enough involvement by the confidential source to meet the Defendant's significant burden.

While Defendant later argues that "[g]iven the totality of the circumstances *suggested* by the discovery in this case, an informant almost certainly information [sic] available only to a participant or instigator," and that the "informant is *likely* an eyewitness who possess information that bears directly on the defense of the instant case," Defendant provides no factual basis for this assertion.  Doc. 24 at 8-9 (emphasis added).  Moreover, there is no suggestion from the Indictment or any other facts adduced here that anyone other than Abu Zuhrieh and Kandil was involved in the alleged conspiracy or sale of "Bizarro."  Such a speculative connection between an informant and the crimes at issue patently cannot supply the quantum of informant involvement required to warrant disclosure of the source's identity.  *See, e.g.*, *United States v. Leahy*, 47 F.3d 396, 398 (10th Cir. 1995) ("A CI's testimony must be shown to be valuable to a defendant; mere speculation is not enough."); *United States v. Cruz*, 680 F.3d 1261, 1263 (10th

Cir. 2012) ("panels that uphold such denials generally find that the value of the informant to the defense is 'speculative' or irrelevant.").

No government informant participated in or witnessed the crimes charged in the Indictment; the involvement of any confidential source was, at most, ancillary to the offenses at issue. That is, even if the Defendant is correct that the government's "interest in Mr. Abu Zuhrieh appears to have come from information provided by an informant," the government is not obligated to uncloak this source because he or she did not participate in or witness the conduct on which the Defendant will be tried. Therefore, the *Rovario* analysis, as refined by the Tenth Circuit, does not militate for the breach of privilege in the instant case. Of course, nothing in the Court's decision should be read to limit the prosecution's continuing obligation under *Brady*, *Giglio*, and their progeny.

## CONCLUSION

Ultimately, the Court agrees with the government that both of the Motions must be denied. Based on the facts before the Court, neither Defendant can meet his burden and demonstrate that he is entitled to the relief requested.

**IT IS THEREFORE ORDERED** that Defendant Islam Kandil's Motion to Sever [Doc. 22] and Defendant Firas Abu Zuhrieh's Motion for Disclosure of Identity of and Information About Confidential Informant [Doc. 24] are **DENIED.**

Dated this 8th day of April, 2015.

MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE